**In re AMERICAN BULK TRANSPORT CO., an Iowa Corporation, Debtor.**

**Bankruptcy No. 80–20318.**

United States Bankruptcy Court, D. Kansas.

Dec. 15, 1980.

Fred Arnold and Gary Mayes, of Thompson & Mitchell, St. Louis, Mo., Kenneth J. Reilly, Boddington & Brown, Kansas City, Kan., for Mercantile.

R. Pete Smith and Donald E. Bucher, of McDowell, Rice & Smith, Kansas City, Kan., for debtor.

Thomas M. Mullinix, Kansas City, Kan., for creditors committee.

John K. Pearson, Asst. U. S. Trustee, Wichita, Kan.

## MEMORANDUM OPINION AND ORDER ON APPLICATION FOR APPOINTMENT OF EXAMINER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on the 3rd day of October, 1980, pursuant to Mercantile Trust Company's Application for Appointment of Examiner.

Mercantile Trust Company was represented by Fred Arnold and Gary Mayes, of Thompson & Mitchell; the debtor, American Bulk Transport Co., was represented by R. Pete Smith and Donald Bucher of McDowell, Rice & Smith; the Creditors Committee was represented by Thomas M. Mullinix of Evans & Mullinix; and Minnesota Mining and Manufacturing was represented by Geoffrey E. Lind, of Lind & Lind.

### FINDINGS OF FACT

1. The debtor, American Bulk Transport (hereinafter referred to as "ABT") is an Iowa Corporation which is a common carrier engaged in the business of transporting commodities throughout the United States. The president of ABT since ABT's incorporation in 1948, has been Eldon Miller.

2. The movant in this matter, Mercantile Trust Company (hereinafter referred to as "Mercantile") is a national banking association with its principal place of business in St. Louis, Missouri. Mercantile has filed its Proof of Claim in this case as a secured creditor in the amount of $547,031.00.

3. In October, 1967, ABT borrowed $500,000.00 from Mercantile. ABT granted Mercantile a security interest in ABT's various operating authorities as security for the loan. In addition, all of the shares of the common capital stock of ABT were pledged to Mercantile as additional security. Mercantile continues to hold these shares as pledgee.

4. In 1971, ABT granted security interests in ABT's operating authorities to Aim Trucking and to Financial Corporation. At all relevant times, Eldon Miller was president and his wife, Gladys Miller, was secretary of ABT, Aim Trucking, and Financial Corporation.

5. In 1975, Financial Corporation filed a petition in bankruptcy in the United States District Court for the Western District of Missouri. The interests that Financial Corporation had in ABT were sold by the trustee in bankruptcy to Lux Incorporated, of Chesterton, Indiana, for $110,000.00.

6. ABT has listed Lux Incorporated, as a secured creditor. The security is described in the schedules as "operating rights", and the amount of the claim is stated as $1,694,468.59.

7. A judgment was entered in favor of Mercantile and against ABT in the Circuit Court of the city of St. Louis, Missouri, on January 25, 1980. The Court there found that Mercantile had a perfected security interest in ABT's operating authorities and all of ABT's stock. The security interest of Financial Corporation in ABT's operating authorities, which was sold to Lux Incorporated, was found to be unperfected and subordinate to Mercantile's security interest in those same operating authorities. The operating authorities were ordered sold, with the proceeds to be given to Mercantile. The sale was prevented by the automatic stay that went into effect when ABT filed its petition in bankruptcy on April 16, 1980.

8. ABT has appealed the judgment of the Circuit Court of the city of St. Louis, Missouri, to the Missouri Court of Appeals. ABT states that the scope of the issues on appeal involves a determination of the validity and priority of security interests claimed by parties in that suit. By order of this Court, the automatic stay was terminated with respect to ABT's appeal (Case No. 80-0141).

9. Mercantile's exhibits 6, 7 and 8 show that ABT has suffered a loss in retained earnings of approximately $1,547,000.00 since December, 1968.

10. ABT's intrastate operating authorities in Arkansas and Nebraska have been terminated by the Transportation Commissions of those states. The uncontroverted testimony of Eldon Miller, president of ABT, was that the operating authorities were allowed to lapse since ABT had not operated intrastate in those states in more than 20 years, and since there were no foreseeable revenues from these operating authorities justifying the cost of maintaining them. Mercantile claims a security interest in these operating authorities, but has not presented to this Court any evidence of the value that these operating authorities had to either ABT or Mercantile.

11. ABT had not timely filed its annual reports for 1977, 1978, or 1979, with the Interstate Commerce Commission. Although ICC has the power to revoke operating authorities for failure of a carrier to file its annual reports, no steps have been taken against ABT for its failure to file its annual reports. Subsequent to Mercantile's Application for Appointment of Examiner, ABT has filed its 1977 and 1978 annual reports with the ICC.

12. ABT has filed with the United States Trustee, monthly financial reports prepared in the format requested by the United States Trustee. Mercantile contends that these financial statements are insufficient to adequately inform the United States Trustee, the creditors of ABT, or

this Court of the true financial condition of ABT.

13. According to the reports prepared by ABT and furnished to the United States Trustee, in the five months since ABT filed its petition, it has made a net profit each month, for a total net profit of approximately $39,000.00 during this period.

14. ABT has retained the services of Raymond P. Kreigher to perform legal services for ABT without prior authorization from this Court. Mr. Kreigher has not been compensated for his services or his expenses. Subsequent to the hearing in this matter, this Court granted ABT the authority to employ Mr. Kreigher as additional and special counsel, all fees being subject to the approval of this Court.

15. Albert Walters, Chairman of the Creditors Committee in this case, testified that none of the three members of the Creditors Committee desired the appointment of an examiner. Mr. Walters also testified that he has known Eldon Miller on a business and personal basis for twelve years, and has not noted any mismanagement at ABT.

## ISSUES INVOLVED

I. WAS MERCANTILE REQUIRED TO SEEK APPOINTMENT OF A TRUSTEE AS A CONDITION PRECEDENT TO ITS APPLICATION FOR APPOINTMENT OF AN EXAMINER?

II. IS THERE SUFFICIENT EVIDENCE TO SHOW THAT AN EXAMINER SHOULD BE APPOINTED?

## CONCLUSIONS OF LAW

### I.

Both ABT and the Creditors Committee contend that an application for appointment of a trustee is a condition precedent to the application for appointment of an examiner.

■ After examining the sections in Chs. 1, 3, 5 & 11 of the Bankruptcy Code,

the Court finds that it is not necessary that an application be made for appointment of a trustee in order for the Court to consider the application for the appointment of an examiner. The Court is ever mindful that the duties of an examiner are more restrictive than those of a trustee, in that an examiner is appointed for the purpose of conducting an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in management of the affairs of the debtor by current management; whereas, a Ch. 11 trustee has broad powers, including the power to operate the debtor's business.

■ It is likely that a dissatisfied creditor who has alleged fraud, dishonesty, or mismanagement would seek to have the Court appoint a trustee rather than an examiner, especially considering that the standards for appointment of an examiner are the same as those for the appointment of a trustee [H.R.95‑595, p. 402 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787].

11 U.S.C. § 151104(a) governs the appointment of a trustee, on request of a party in interest. 11 U.S.C. § 151104(b), which governs the appointment of an examiner, states in pertinent part, as follows:

*"(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor . . ."*

ABT and the Creditors Committee interpret the aforementioned section to mean that the appointment of an examiner can only be made after there has been a request for the appointment of a trustee. This interpretation is not mandated by the plain language of the statute; nor, does it comport with judicial economy to require a hearing on an application to appoint a trustee prior to the appointment of an examiner, where no party desires the appointment of a trustee.

Further evidence that Congress did not intend the appointment of a trustee to be a condition precedent to the appointment of

an examiner is set out in H.R.95–595, at pg. 402, U.S.Code Cong. & Admin.News 1978, p. 6358, where Congress stated in part:

*"Generally, a trustee would not be needed in any case where the protection afforded by a trustee could equally be afforded by an examiner."*

Therefore, it is the finding of this Court that an examiner may be appointed, whether or not a trustee has been appointed initially.

## II.

The principal issue in this matter is whether Mercantile has met its burden of showing that an examiner should be appointed to investigate the debtor.

11 U.S.C. § 151104(b)(1) states as follows:

*"(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—*

*(1) such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate;"*

▪ As stated previously, the standards for the appointment of an examiner are the same as those for the appointment of a trustee. Although the statute speaks in terms of allegations of wrongdoing or mismanagement, it has been held that there should at least be some evidence presented that such allegations have some factual basis. *In re Bel Air Associates, Ltd.*, 4 B.R. 168, 6 BCD 284, 2 CBC 103 (Bkrtcy.W.D. Okla.1980). Additionally, legislative history recognizes that the costs and expenses of an examiner must not be *"disproportionately high"* [H.R.95–595, pg. 402 (1977)]. Ultimately, the appointment of an examiner

depends upon whether the appointment is in the best interests of creditors, equity security holders, and other interests of the estate; the question is one that is equitable and discretionary with the Court. *In Re Lenihan*, 4 B.R. 209, 6 BCD 368, 2 CBC 72 (Bkrtcy.D.R.I.1980).

▪ The duties of an examiner are set forth in 11 U.S.C. § 1106(a)(3) & (4), plus any other duties of the trustee that the Court orders the debtor-in-possession not to perform. (11 U.S.C. § 1106(b)). The examiner's primary duty is to investigate and report on the financial position of the debtor, the operation of the debtor's business, and the desirability of the continuance of the business.

Of Mercantile's many allegations, several can be dismissed summarily. The question of a breach by ABT of the 1967 security agreement between Mercantile and ABT depends upon the validity and the priority of Mercantile's security interest. Pursuant to the Complaint to Modify Stay filed by Mercantile (Adversary Case No. 80–0141), this Court allowed the question to be decided by the Missouri Court of Appeals. This Court thus won't presume to declare that ABT's granting to Lux Incorporated, a security interest in the operating authorities indicates any mismanagement by ABT.

The monthly financial statements that ABT has prepared for the United States Trustee are in the format requested by the United States Trustee. There has been no convincing evidence presented that an examiner would provide a more accurate picture of the financial status of the company.

The retention of attorney Raymond Kreigher by ABT prior to court approval is not such a dishonest act as to require appointment of an examiner. No fees were paid to Mr. Kreigher, and ABT has since the hearing, obtained authorization to employ Mr. Kreigher.

The failure of ABT to timely file its annual reports with the ICC has not put its ICC operating authorities in jeopardy, nor is this a significant indication of mismanagement.

The loss of the Arkansas and Nebraska intrastate operating authorities is justifia-

ble, in view of the fact that ABT has no need for the operating authorities in its business. Since no evidence has been presented that the operating authorities could be sold for any significant amount, it must be presumed that they were as worthless to a secured party as they were to ABT.

Further, the Creditors Committee does not desire the appointment of an examiner and feels the expense involved would affect the possibility of successful reorganization.

■ For reasons set out above, the Court finds there is not sufficient evidence to show that it would be in the best interest of the creditors or other interests of the estate to appoint an examiner. Therefore, the Application of Mercantile Trust Company for the appointment of an examiner should be and hereby is denied.

THE FOREGOING SHALL CONSTITUTE MY FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

IT IS SO ORDERED.