In re JOHNS–MANVILLE CORPORA-TION, et al., Debtors.

**KEENE CORPORATION, Appellant,**

v.

**JOHNS–MANVILLE CORPORATION, et al., Debtors-Appellees.**

No. 84 Civ. 1159(RLC).

United States District Court, S.D. New York.

July 30, 1984.

Davis Polk & Wardwell, Levin & Weintraub & Crames, New York City, for debtors-appellees Johns-Manville Corp., et al.; Lowell Gordon Harriss, Miriam G. Cedarbaum, Karen E. Wagner, New York City, of counsel.

Anderson Russell Kill & Olick, P.C., New York City, for appellant Keene Corp.; Arthur S. Olick, Stephen J. Shimshak, Adrienne M. Coffin, New York City, of counsel.

ROBERT L. CARTER, District Judge.

Keene Corporation ("Keene"), a party in interest in the Chapter 11 proceeding of Johns-Manville Corporation ("Manville"), appeals from an order of the bankruptcy court, Lifland, J., conditioning Manville's production of documents analyzing its historical share of the asbestos market on Keene's production of similar material. Appellant maintains that the bankruptcy court exceeded its authority by ordering Keene to produce such data and that the order should be modified to compel disclosure by Manville alone. For the reasons set forth below, the bankruptcy court's order is vacated and the matter remanded to that court for reconsideration.

## BACKGROUND

Citing its potential liability in thousands of pending and future asbestos-related personal injury suits, Manville and a number of related companies filed for relief under Chapter 11 on August 26, 1982. Keene, a co-defendant in many of those cases, appeared in the bankruptcy proceeding and has been an active participant. On November 19, 1982, the bankruptcy court entered a comprehensive order governing the examination of witnesses by parties in interest and the production of documents by Manville.[1] One provision thereof required Manville to produce:

> All documents, whenever created, recording, referring or relating to market studies of the sale by volume, dollar amount, industry segment, geographic location and purchaser of asbestos and asbestos-related products by Manville and others from 1930 to the present.

Exhs. B, C, and D to Application for Production of Documents and Examination of Witnesses at ¶ 20. For reasons that are disputed but not relevant to this appeal, no market-share data was produced pursuant to this order. On July 12, 1983, Keene served a subpoena *duces tecum* on Manville demanding disclosure of market share

---

1. This order was propounded under Bankruptcy Rules 205, 10–213 and 11–26. These rules were superseded by Rule 2004 on August 1, 1983.

information. Manville moved to quash the subpoena, arguing that it was burdensome and that it demanded the production of irrelevant material. A hearing on Manville's motion to quash was held before Judge Lifland on October 7, 1983.

At the hearing, counsel for Keene and counsel for Owens-Illinois, Inc., another co-defendant in many of the asbestos cases, argued that the relevance of the requested market-share data lay in its importance to ongoing negotiations between Manville and the co-defendants. These negotiations are aimed at creating a claims-handling facility to be funded by these companies and used to make payments to asbestos claimants. Ideally, the claims-handling facility would be incorporated into a consensual reorganization plan for Manville. Counsel urged that the market-share data was crucial to the determination of what proportion of the cost of paying claims should be borne by Manville. After counsel's presentation, the court observed that "for that purpose market sharing information would have to come from both directions, not only from Manville but from your people." (Tr. 13).[2] Accordingly, Judge Lifland conditioned Manville's disclosure upon similar disclosure by Keene and Owens-Illinois.[3]

DISCUSSION

■ Keene's principal contention on appeal is that inquiry into its own market-share data goes beyond the scope of examination permitted by Bankruptcy Rule 2004. Appellant acknowledges that the rule contemplates a broad and far-reaching inquiry, even a "fishing expedition", *see In re Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr. S.D.N.Y.1981), and that creditors and third parties, as well as the debtor, may be examined, *see Chereton v. United States*, 286 F.2d 409, 413 (6th Cir.), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961), but insists that the inquiry must be limited to the *debtor's* affairs. The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate. *See Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914). The examination of witnesses having knowledge of the debtor's acts, conduct, liabilities, assets, etc. is therefore proper, *see In re GHR Energy Corp.*, 35 B.R. 534, 11 B.C.D. 312 (Bankr.D.Mass. 1983), and the inquiry may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him." *In re Mantolesky*, 14 B.R. 973, 976 (Bankr.D. Mass.1981). Examination of a witness as to matters having no relationship to the bankrupt's affairs or the administration of his estate, however, is improper. *See generally* 12 *Collier on Bankruptcy* ¶ 205.15 (14th ed. 1978). Appellant maintains that its market-share data simply has no bearing on the financial condition or dealings of the Chapter 11 debtor.

■ The court has no quarrel with appellant's statement of the pertinent legal principle, but the court's determination of the relevance of Keene's market-share data to this Chapter 11 proceeding is hampered by the anomalous posture of the litigants. Neither party to this appeal has argued that Keene's market-share data is, in fact, relevant to the bankruptcy proceeding. Manville opposes the appeal but maintains, as it did before the bankruptcy court, that all market-share data is irrelevant. Its opposition is based solely on the argument that if Manville's data is relevant, which it denies, so too is that of Keene and the other asbestos case co-defendants. Moreover, although it is clear that a thorough understanding of why Manville's market-share data is relevant might help the court determine whether Keene's data would or would not serve a similar purpose, Keene, perhaps concerned that a discussion of the grounds on which the bankruptcy court ordered the production of the Manville documents would support Manville's argument on appeal, has not addressed the matter. In sum, despite the fact that both parties to

---

2. References are to the transcript of the hearing held October 7, 1983.

3. Owens-Illinois is not a party to this appeal.

this appeal acknowledge that the case turns on the relevance of market-share data to the Chapter 11 proceeding, the court has been provided with no argument that such data, Keene's or Manville's, is relevant.

Although Judge Lifland did not write an opinion on this matter, the transcript of the October 7, 1983 hearing, which he made a part of his order, provides some insight into the grounds on which he ordered mutual discovery of market-share information. As noted above, counsel for Keene and Owens-Illinois argued that the data was needed to facilitate negotiations over an asbestos claims-handling facility. A careful reading of the transcript reveals that it was for this reason, to smooth the negotiation process, that Judge Lifland allowed discovery of the market-share data. Because a claims-sharing agreement would involve all the co-defendants, not just Manville, the judge expressed the view that unilateral disclosure would be inadequate and inappropriate. "I am concerned [that] you are seeking market share data on a one-way basis." (Tr. 17). "If Manville strips itself bare with respect to disclosing this kind of information it still leaves the door open for twenty or more co-defendants declining that kind of information." *Id.* Ultimately, he ordered disclosure by Keene as a "quid pro quo" for Manville's disclosure. (Tr. 28).

In this court's view, although the bankruptcy court's desire to engineer a negotiated settlement was understandable and laudable, the facilitation of negotiations was not a proper ground on which to order the non-voluntary production of documents not otherwise discoverable under Rule 2004. The rule allows the examination of witnesses as to any matter "relevant ... to the formulation of a plan" in a Chapter 11 case, but this provision must be read in light of the general restriction of inquiry to the financial affairs of the debtor. Nothing presented to the bankruptcy court indicates any connection between documents analyzing Keene's share of the asbestos market and Manville's financial affairs, nor did Judge Lifland articulate such a connec-

tion, nor is one apparent to this court. Accordingly, the bankruptcy court's conditioning of Manville's disclosure of market-share data on reciprocal disclosure by Keene was improper.

RELIEF

Appellant suggests that the court should modify Judge Lifland's order only by striking the requirement that Keene produce its market-share data. Appellant maintains that Manville's failure to appeal requires the court to leave in place that aspect of the order compelling disclosure by appellee. Appellee argues that should the court find disclosure by Keene improper, it should vacate the bankruptcy court's order *in toto*, as unilateral discovery would defeat the purpose of Judge Lifland's order.

The latter is the sounder view. The two halves of the bankruptcy court's order cannot be treated independently without doing violence to that court's plain intent. The bankruptcy court's directive to Manville to disclose its market-share data and its similar directive to Keene were not separate and discrete orders, but two interdependent aspects of a single mandate. It is by no means certain that Judge Lifland would have ordered unilateral disclosure by Manville if that had been his only option. His comments at the hearing, if anything, indicate the contrary.

There may be good reasons to order unilateral disclosure. The market-share information disclosure provision of the November 19, 1982 order may well indicate that this is the case. It is appropriate, however, for the bankruptcy court, which is thoroughly conversant with this Chapter 11 proceeding, to make that determination. This is especially so in light of the fact that appellant has not argued the propriety of the disclosure order as to Manville to this court. The record before the court reveals only that market-share data was ordered disclosed to facilitate negotiations. As explained above, that is an insufficient reason to compel discovery under Rule 2004.

Keene has shown that the bankruptcy court's reciprocal disclosure order cannot

stand. The fact that Manville was willing to comply with that order does not, however, compel this court to require unilateral disclosure which the bankruptcy court did not order and the propriety of which appellant has not demonstrated. The bankruptcy court's order of December 8, 1983 is vacated. The matter is remanded to the bankruptcy court for reconsideration in light of this opinion.

IT IS SO ORDERED.