**In the Matter of Paul D. WILCHER, Sr., Debtor.**

**Bankruptcy No. 82 B 8657.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 13, 1985.

## MEMORANDUM DECISION AND ORDER QUASHING SUBPOENA

ROBERT D. MARTIN, Bankruptcy Judge.

This matter concerns the motion of Seymour H. Persky to quash the subpoena duces tecum served upon him by Lawrence Cooper, the court appointed examiner in the Paul D. Wilcher, Sr., personal chapter 11 bankruptcy case. Wilcher filed a chapter 11 petition on July 2, 1982. For several years prior to that time he had been the sole general partner of an Illinois limited partnership called the Sherman-Noyes and Prairie Apartments Real Estate Investment Partnership. That partnership had previously filed its own chapter 11 petition on April 2, 1980. After filing its petition in bankruptcy the partnership, through its general partner Wilcher, continued to do business as a debtor in possession. Ongoing losses mounted, however, and on August 4, 1981, Bankruptcy Judge Frederick Hertz ordered the appointment of a trustee.

During February of 1982 the trustee liquidated all of the real properties which constituted the partnership's assets. These properties consisted of the Sherman Avenue apartment complex, the Orrington Hotel and parking garage, and the Fountain Square office building, all located in Evanston, Illinois. The apartment complex was the first property sold. This sale was ordered by the bankruptcy court on or about February 8, 1982. The property was sold to Seymour H. Persky and his wife, the movants in this motion. The other properties were all sold to different parties not presently involved in the motion to quash the subpoena.

Certain irregularities allegedly surround the sale of the apartment complex. Specifically Wilcher has alleged that the apartments were sold for an inadequate consideration and without proper notice. He also alleges that an appraiser was appointed by the bankruptcy court ex parte without proper notice and hearing. More generally, Wilcher has alleged the existence of a massive conspiracy involving almost everybody who has had anything to do with the business of the partnership, including the partnership's chapter 11 trustee, Mr. Leroy, and Judge Hertz who was the presiding bankruptcy judge at that time. Although Mr. Wilcher has filed literally thousands of pages of documents in various courts and other government agencies in which the existence of a conspiracy is repeatedly alleged, he has until this time produced no sound evidence which would tend to prove the existence of a criminal conspiracy.

On May 26, 1983, Lawrence Cooper was appointed as examiner in the Wilcher personal cases. Mr. Cooper's appointment was felt to be necessary because, despite the vagueness of Wilcher's allegations, there is a plausible suggestion of irregularities surrounding the sale of the Sherman Avenue apartment complex as noted above. The basis upon which the examiner now seeks discovery of Persky is that if substantial wrongdoing were found to have surrounded the sale of the Sherman Avenue apartment buildings in 1982 the sale might be reversed or money damages might become available in the partnership chapter 11 case. This in turn might have an impact upon the administration of the Wilcher personal cases due to Wilcher's status as general partner of the partnership.

In his memorandum in support of his motion Persky asserts a number of grounds upon which this court should quash the subpoena duces tecum. Persky asserts that the scope of the requested examination violates Bankruptcy Rule 2004, and further that the examiner has not shown good cause for the taking of discovery from Persky. Most importantly, Persky argues that the order of Judge Moran confirming the sale of the Sherman Avenue apartments and affirming Judge Hertz's order authorizing that sale has conclusively disposed of all issues of fact and law surrounding the sale of the apartment complex. Thus, Persky asserts that any discovery relating to those issues is improp-

er. For reasons discussed below the subpoena must be quashed.

### I.

The scope of the examination sought exceeds the examiner's authority under sections 1104 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004. An examiner in a chapter 11 case is appointed pursuant to 11 U.S.C. § 1104 and performs certain of the trustee's duties, primarily investigative in nature, as specified in 11 U.S.C. § 1106. Section 1104 provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor *of or by current or former management of the debtor,* if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of a trustee or examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the court shall appoint one disinterested person to serve as trustee or examiner, as the case may be, in the case.

11 U.S.C. § 1104 (emphasis added). Section 1106 provides in relevant part:

(a) A trustee shall—

. . . .

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

. . . .

(b) An examiner appointed under section 1104(c) of this title shall perform the duties specified in paragraphs (3) and (4) of subsection (a) of this section, and, except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession not to perform.

11 U.S.C. § 1106(a)(3), (4), (b). The scope of the permissible examination is further

defined by Bankruptcy Rule 2004 which provides in relevant part:

### EXAMINATION

(a) Examination on Motion. On motion of any party in interest, the court may order the examination of any person.

(b) Scope of Examination. The examination of any person under this rule or of the debtor under § 343 of the Code *may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.* In an individual's debt adjustment case under chapter 13 or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

(c) Compelling Attendance and Production of Documentary Evidence. The attendance of any person for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

Bankruptcy Rule 2004 (emphasis added). ■ The general rule is that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted. *In Re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr.E.D.Wis.1984); *In Re GHR Energy Corp.*, 35 B.R. 534 (Bankr.D.Mass. 1983). The scope of examination allowed under Bankruptcy Rule 2004 is larger than that allowed under the Federal Rules of Civil Procedure and can legitimately be in the nature of a "fishing expedition." *See In Re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr.E.D.N.Y.1983) and cases cited therein. Although the primary purpose of a Rule 2004 examination is to permit the trustee to quickly ascertain the extent and location of the estate's assets, *see In Re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr.D.Mass.1981) (discussing purpose of former Bankruptcy Rule 205), such examination is not limited to the debtor or his agents, but may extend to creditors and third parties who have had dealings with the debtor. *See Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961); *cert. denied* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961).

■ A trustee is under an affirmative duty to investigate the debtor's affairs in order to discover and recover assets of the estate. *Vantage Petroleum*, 34 B.R. at 651. It would seem similarly legitimate for the examiner to investigate creditors or other parties who may have been the recipients of fraudulent transfers from the debtor. *See id.; see also In Re Foxcroft Bldg. Corp. Foxcroft Ltd.*, 13 B.R. 837 (Bankr.S. D.Fla.1981); *see generally Chereton v. United States, supra.*

■ Although the scope of the examination permitted under Bankruptcy Rule 2004 is broad it is not without limits. The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *In Re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y.1984).

■ Furthermore, although third parties may be examined with an eye toward uncovering defalcations affecting the estate, the appropriate scope of the examiner's powers is made clear by 11 U.S.C. § 1104(b) (quoted fully above):

the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor *of or by current or former management of the debtor....*

(emphasis added). The emphasized language makes clear that the main function

of the examiner is to uncover defalcations involving the debtor and his management of the estate. *See In Re American Bulk Transport Co.*, 8 B.R. 337, 340 (Bankr.D. Kan.1980). The examination of third parties is at best ancillary to that main purpose.

█ Thus, although Rule 2004 permits examinations of "third parties" the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In Re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr.D.Mass.1983). It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.

█ The proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought. *See* FRCP 26 et seq.; *In Re GHR Energy Corp.*, 33 B.R. 451, 454 (Bankr.D.Mass.1983); *In Re Good Hope Refineries, Inc.*, 9 B.R. at 423 (contrasting former Bankruptcy Rule 205 with Federal Rules of Civil Procedure), *see also In Re Isis Foods, Inc.*, 33 B.R. 45 (Bankr.W.D.Mo.1983). By contrast, the procedural safeguards provided by Bankruptcy Rule 2004 are minimal. *See In Re GHR Energy Corp.*, 33 B.R. at 454. Since Rule 2004 allows in effect a "fishing expedition" in order to allow the trustee to quickly locate assets of the estate, an examination under Rule 2004 need not be limited, as are examinations under the Federal Rules of Civil Procedure, to issues raised with reasonable particularity in a complaint. *See In Re Isis Foods, Inc.*, 33 B.R. at 46–47. In the matter at bar the scope of the examiner's discovery request makes clear that he is seeking a Rule 2004 "fishing expedition."[1] The discovery is

sought from a party who has not been shown to have been involved in the debtor's business affairs in any way, save for his purchase of the Sherman Avenue apartment property. Persky's involvement with any alleged irregularities in the Wilcher and Sherman-Noyes bankruptcy cases has not been substantiated in any way in the nearly four years since his acquisition of the apartment property in a court approved sale. Under such circumstances the imprecise standard of relevancy in Rule 2004 requires the court to exercise its discretion and balance the competing interests between the examiner's right to expose alleged chicanery and Persky's right to privacy in his business affairs. *See Vantage Petroleum, supra* at 651; *Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir.1959); *Freeman v. Seligson*, 405 F.2d 1326, 1334 (D.C.Cir.1968). In the absence of any actual evidence of duplicity, Persky is not properly subject to a Rule 2004 examination. *See id.*

## II.

█ Even if a Rule 2004 examination were proper, the examiner has not shown good cause for the requested discovery. Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery. *See Freeman v. Seligson*, 405 F.2d at 1336; *In Re Silverman*, 36 B.R. 254, 258 (Bankr.S. D.N.Y.1984). This is so even though the ultimate burden of persuasion on a motion to quash a subpoena duces tecum as oppressive rests on the movant. *Freeman v. Seligson, supra* at 1337. Thus the proper allocation of burden of proof on this motion to quash initially requires the examiner to show some reasonable basis to examine the material sought to be discovered. Good cause may ordinarily be shown by a claim that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue

---

1. *See infra* at page 435 for text of the relevant portion of the subpoena.

hardship or injustice, however the burden of showing good cause is an affirmative one and is not satisfied merely by a showing that justice would not be impeded by production of the requested documents. *Id.* at 1336. That the burden should initially lay on the examiner is especially appropriate in this matter where the requested discovery is extensive and may place substantial compliance difficulties on Persky. *See id.*

 A review of the subpoena and accompanying order for examination conclusively show that the examiner has not met his burden of proof in this matter. The relevant portion of the order provides:

C. That Seymour H. Persky, officer of Parliament Enterprises, Inc., produce: (1) any and all documents in this possession or control relating to the purchase of the three Sherman Avenue Apartment Buildings in Evanston, Illinois including but not limited to mortgage documents, leases, refinancing agreements, and any contract or document reflecting a resale by him or any other person or entity of the Apartments to any third party including but not limited to a land trust; (2) all journals, books of entry, and books of account in his possession or control, or in the possession or control of any corporation, partnership, or land trust in which he has an interest or is an officer or director pertaining to receipts and disbursements for the period from the date of the acquisition, February 8, 1982, to the date of this application; (3) any record or document in his possesion or control relating to the sale of the Apartments from the date of acquisition, February 8, 1982.

The wide scope of the intended discovery has not been supported by any facts of which this court has been made aware, and appears on its face to delve into matters which have no probable relevance to the original sale of the apartments. This is especially so because of the application of res judicata and collateral estoppel, discussed below. Further, the examiner has not alleged that the broad discovery sought

is necessary to establish a claim or that denial of the discovery would result in undue hardship upon the examiner.

## III.

 Principles of res judicata and collateral estoppel present a complete bar to the discovery sought. A memorandum and order of the district court, dated May 10, 1983 dismissed an appeal from the bankruptcy court's order authorizing the sale of the Sherman Avenue apartments to Persky and his wife. All issues relating to the discovery now sought were conclusively determined in the appeal proceeding. These conclusions require three closely related determinations: first, the applicability of the "doctrine of finality" to this motion to quash discovery; second, a determination of the relationship between the issues decided in the appeal order and the discovery herein sought; and third, a determination of the relationship between the parties to each proceeding.

## A.

The doctrines of res judicata and collateral estoppel 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). 'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.' *Id.* (citations omitted). *Warren v. McCall,* 709 F.2d 1183, 1184 (7th Cir.1983) (footnote omitted). Thus under the doctrine of res judicata parties and those in privity with them are precluded from relitigating issues that could have properly been raised in the prior litigation

as well as issues actually decided. Under the doctrine of collateral estoppel any issue which was previously decided and was necessary to the prior judgment may not be relitigated by a party to the first action. Since the demise of the doctrine of mutuality, collateral estoppel may be used defensively by one not party to a prior action against the party (and those in privity) who lost on the issues decided in the first action. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In appropriate circumstances collateral estoppel may also be applied offensively against a party or his privies who lost on an issue in prior litigation. *Warren v. McCall, supra* at 1185; *see Parklane Hosiery Co. Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

In order to assert the doctrine of collateral estoppel it must be established that the party sought to be bound (or his privies) had a full and fair opportunity to litigate the issues in question in the prior litigation. *See id.* at 328, 99 S.Ct. at 650; *see also Blonder-Tongue Laboratories, supra.*

Further it is clear that the principles of finality discussed above apply not merely to the actual relitigation of prior decided issues, but also to matters ancillary to litigation such as discovery. *See In Re Silverman,* 36 B.R. 254 (Bankr.S.D.N.Y.1984). In *Silverman* the court granted a motion to quash a subpoena issued at the debtor's behest, because it had previously determined that the debtor had no standing to object to a creditor claim which was the target of the discovery request. While the court acknowledged that discovery might be appropriate if it would bear upon issues beyond those resolved in the prior litigation, it went on to state:

> The instant case does not present such possibilities. Unlike the trustee inquiring into issues which might affect the administration of the estate, this adjudicated bankrupt has been determined by this court, and by the district court on appeal, to lack standing *vis a vis* Leucadia's claim against the estate. The validity of this claim may not be relitigated under the doctrine of res judicata. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Gargiul v. Tompkins,* 704 F.2d 661, 665 (2d Cir.1983). Similarly, this court's prior decision finding that no fraud was committed by Leucadia precludes a renewal of such an argument at this stage. *See id.; Garr v. Lerner,* 528 F.Supp. 630, 632 (S.D.N.Y.1981). To permit discovery as to these matters will only lead to the inevitable roadblock of res judicata which will bar the underlying claims on the merits.

*Id.* at 258–59.

### B.

A comparison of the issues decided in Judge Moran's order dismissing the appeal of the sale order and the matters sought to be discovered herein, shows a close connection. It is worth noting at the outset that the appeal of the apartment sale was not instigated by the Sherman-Noyes Partnership trustee but by the debtor in the instant matter, Paul Wilcher, who was and is the partnership's sole general partner. Although Wilcher failed to file a transcript of the proceedings below which might have provided some substance to his allegations of fraud, he did raise, in voluminous pleadings, a far reaching charge of "predatory criminal bankruptcy fraud" in which numerous specific violations of law were alleged. An important aspect of Wilcher's theory of predatory bankruptcy fraud was the allegation that Persky was involved in the fraudulent scheme to loot the estate's assets and thus was not a good faith purchaser. In his decision on appeal, Judge Moran explicitly rejected the allegation that the Perskys were not good faith purchasers. Relevant parts of the opinion are set out below:

> In his voluminous arguments the general partner of the debtor raises numerous reasons why the debtor should be permitted to appeal and should prevail, including the contention that he had been betrayed by the Perskys because they had

not acceded to his importunings to withhold any bidding on the property. He here seeks, curiously, to transform this gross violation of law into a basis for equitable relief before this court. Most of those contentions were never raised in the Bankruptcy Court and depend upon the non-record representations of the general partner. These include the contentions that the Perskys were not good faith purchasers, that the mortgagee was in breach of its obligations, that the trustee is biased, that the debtor's attorney was inadequate, that the sales negotiations were unfair, that the Perskys got a windfall because they could assume the existing low-rate mortgages, that the trustee has not properly accounted for the sale proceeds, and that the transaction and any claimed need for it were the results of conspiracy.

. . . .

Despite the general partner's assertion that there is somewhere lurking a potential violation of § 363(n) of the Bankruptcy Code, the only evidence, and only real suggestion, of an effort by potential bidders to agree to one bidder submitting a rigged price is the general partner's representations of his efforts to discourage bidding by the Perskys. Many of his attacks on Judge Hertz' findings are bassed on credibility determinations conclusive in this court. There is nothing to suggest any collusion between the Perskys and the trustee, and the fact that the mortgagee was willing to permit the Perskys to assume the low-rate mortgages (and thereby gain capable and experienced management for properties in which it had very substantial interests) and thereby caused the purchase to be particularly. attractive to the Perskys was essentially irrelevant to the fairness of the sale.

*In Re Sherman-Noyes & Prairie Apartments Real Estate Investment Partnership,* Nos. 82 C 1665 and 82 C 2080 (N.D.

Ill. May 10, 1983) at 6–7. Finding no basis upon which to disturb the sale the court found that dismissal was warranted:

Even if there is a proper appeal (and even that is questionable in view of the fact that the debtor raises matters relating to the hearing before Judge Hertz and the transcript has never been filed), what has been presented does not show either overreaching or violations of due process. The debtor has not established that the Perskys were not good faith purchasers, if the question was ever raised before the Bankruptcy Court, which is questionable. The sale price, being for cash and well in excess of 75 per cent of the appraised value, met generally applicable standards for the determination of the 'reasonableness' of the sale price and the bankruptcy proceedings. *In Re Rock Industries Machinery Corp.,* 572 F.2d 1195 (7th Cir.1978); *[Greylock] Glen Corp. v. Community Savings Bank,* 656 F.2d 1 (1st Cir.1981). The sale of the property to a good-faith purchaser has long since been consummated and the trustee has been paid. Accordingly, the appeal is dismissed as moot.

*Id.* at 11.

██ The discovery now sought against Persky has only one ultimate objective which is to uncover irregularities, if any, in the sale of the Sherman Avenue apartments and to determine if the Perskys were involved in those irregularities. The district court explicitly found that the Perskys were good faith purchasers and that there was no evidence to suggest any collusion between the Perskys and the trustee. By necessary implication the court determined, at the very least, that the Perskys were not involved in either the criminal conspiracy alleged by Wilcher, or in any irregularities involving the Sherman-Noyes trustee and Judge Hertz, the presiding bankruptcy judge.[2] Any other evidence

---

**2.** Wilcher has contended and the record seems to support the contention that Judge Hertz appointed an appraiser for the apartment property ex-parte and without notice. This irregularity, as well as the short notice of sale, were not found by Judge Moran to have so colored the sale as to necessitate setting aside the sale order. *See In Re Sherman-Noyes, supra* at 8–9.

which may have existed to the contrary was never properly brought before the court on appeal, and Judge Moran's decision itself was not appealed. Although Wilcher alleged that he had not been given a proper opportunity to be heard in various proceedings in the bankruptcy court he failed to substantiate those charges by providing a transcript on appeal. It is clear that if Wilcher had substantiated that charge that the result on appeal would have been much different. Wilcher had a full and fair opportunity to litigate all issues relevant to his charge of irregularities in the apartment sale and failed to present evidence in support of his contentions. Thus, as between parties to the original appeal and those entitled to invoke the doctrine of collateral estoppel against them, the issue of irregularities involving the Perskys is closed.

### C.

■ Although identity of issues has been established, it is still necessary to determine if the parties in this matter are the same or in privity with those in the original litigation in order to determine if res judicata or collateral estoppel apply. The appeal before Judge Moran was nominally prosecuted in the name of the Sherman-Noyes Partnership against Robert Leroy the partnership's trustee in bankruptcy. In that matter the partnership was "represented" by Paul Wilcher, Sr. the sole general partner who purported to be acting as "co-counsel" of the debtor partnership. It is not clear whether the Perskys themselves were named as defendants either in the bankruptcy court or on appeal, although as parties in interest they filed a response to Wilcher's accusations in the bankruptcy court.

> [I]n order to invoke the doctrine of *res judicata*, '(1) ... the prior judgment must have been rendered by a court of competent jurisdiction; (2) ... there must have been a final judgment on the merits; (3) ... the parties, or those in privity with them, must be identical in both suits; and (4) ... the same cause of action must be involved in both suits.'

*In Re Nitsche*, 11 B.R. 443, 447 (Bankr.W. D.Mo.1981) *quoting Stevenson v. Int'l Paper Co.*, 516 F.2d 103, 108 (5th Cir.1975). Similarly, to invoke the doctrine of collateral estoppel there must be a showing that a party or those in privity litigated the same issues previously. *See Parklane Hosiery, supra.* The first question then is to what extent Wilcher in his individual capacity was either a party to Judge Moran's decision in the partnership proceeding or was in privity with the partnership, and to what extent the examiner in the Wilcher personal case is in privity with Paul Wilcher, the debtor. The second question is to what extent Persky may now rely on Judge Moran's ruling, assuming that he cannot be considered a formal party to that action.

■ The parties to an action include not only the formal parties of record but also parties in interest whose interests are properly placed before the court by someone with standing to represent them. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir.1984) citing 1B Moore's Federal Practice ¶ 0.411[1] at 390–91. In the context of a chapter 11 bankruptcy case a party in interest includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee...." 11 U.S.C. § 1109(b). *See also Southmark Properties supra* at 869–70; 1B Moore's Federal Practice ¶ 0.411[1].

■ To determine who is in privity with a party is more difficult. Each case requires a careful analysis of the relevant facts and circumstances. Privity in the res judicata sense generally involves a person so identified in interest with another that he represents the same legal right. 46 Am.Jur.2d Judgments, § 532 (1969) at 683. Privity frequently denotes a mutual or successive interest in the same property. *Id.* at 684. A privy is one who after rendition of a judgment has acquired an interest in the subject matter affected by the judgment through or under one of the parties as by inheritance, succession, or purchase.

*Howell v. Vito's Trucking and Excavating Company,* 191 N.W.2d 313, 316 (Mich.1971) (citations omitted); *Sodak Distributing Company v. Wayne,* 77 S.D. 496, 93 N.W.2d 791 (1958). Privity does not arise merely because the parties are interested in proving or disproving the same set of facts. The binding effect of the prior litigation arises from the fact that when the successor to a property interest acquires the interest in question it is "affected" by the adjudication in the hands of the former owner. *Id.* 93 N.W.2d at 795. Ordinarily one is not privy to a judgment unless his rights in the property affected thereby accrued subsequent to the commencement of suit. *Bismarck Public School District No. 1 v. Hirsch,* 136 N.W.2d 449, 451–52 (N.D.1965) citing 50 C.J.S. Judgments § 788 (1947). Thus in order to create privity with respect to the subject property two elements must be met: 1.) The person in privity must claim an interest in the subject matter of the prior litigation through or under one of the parties to that litigation, and 2.) the interest must have been acquired after the rendition of the prior judgment (or at least subsequent to the commencement of that action). *See Bismarck Public School District, supra* at 452–53 citing II Black on Judgments § 549 (2d ed. 1942).

In this case the debtor Paul Wilcher purportedly acting as a representative of the Sherman-Noyes partnership previously litigated the validity of the sale to the Perskys. Although the general rule is that a party is not bound by principles of res judicata and collateral estoppel in his individual capacity for issues which he previously litigated in a representative capacity, that rule does not apply when a party prosecutes an action in a representative capacity but is also himself one of the parties represented. For instance, when a party prosecutes an action as trustee and is himself individually one of the cestui que trust he is bound by the decree personally. *Corcoran v. Chesapeake and Ohio Canal Co.,* 94 U.S. 741, 745, 24 L.Ed. 190 (1876); *see also Howell v. Vito's Trucking, supra* at 316; 46 Am.Jur.2d Judgments § 525. In

this matter it is quite clear that the debtor Paul Wilcher, if not actually representing himself in the prior litigation, was in fact one of those who stood to personally benefit from his purported representation of the interest of the Sherman-Noyes Partnership. This is so because Wilcher was and is the sole general partner of the partnership and because all or many of the limited partners of the partnership are relatives of the debtor. Further Wilcher was a statutory party in interest in the partnership proceedings because he is an "equity security holder" of the partnership within the meaning of the Code. *See* 11 U.S.C. § 1109(b). Therefore, Wilcher individually was a party to the prior litigation.

Since Wilcher is personally bound by res judicata and collateral estoppel from relitigating the issues decided by Judge Moran, his bankruptcy estate would acquire no greater rights. Wilcher's creditors would have had no independent standing to appear in that litigation and Wilcher's subsequent bankruptcy does not give his creditors or their representatives (whether trustee or examiner) any greater standing. Their claim, if any, is through Wilcher. Thus any interests they may currently have in the matters sought to be discovered are "inherited" from Wilcher and are limited by the preclusive effect of Wilcher's prior litigation. Since Wilcher had a full and fair opportunity to litigate his alleged claims with respect to the Perskys at that time, he is foreclosed from reasserting those claims and thus the estate and any parties who might share in its distribution are similarly foreclosed.

Similarly Persky was either a "party" to the prior litigation or was in privity with the Sherman-Noyes trustee with respect to the transactions in question. Persky is an "interested party" within the meaning of the Code. *See* 11 U.S.C. § 1109(b). Even though a purchaser of estate assets is not one of the enumerated parties in that subsection the definitions in the subsection are not exclusive and there is no question that Persky was vitally inter-

ested in the outcome of the prior litigation. Further, Persky acquired his interest from the partnership trustee at or after the time of judgment in the prior litigation and is therefore a successor in interest to the trustee's title in the subject property. This is so because the ultimate effect of Judge Moran's dismissal of Wilcher's appeal was to validate the transfer of that title from the ·trustee to Persky. It is thus quite clear that Persky, even if not considered a "party," to the prior litigation is in privity with the partnership trustee as regards the apartment sale, and thus he may assert res judicata and collateral estoppel as bars to further adjudication concerning his title to the Sherman Avenue Apartments.

 Further to the extent the examiner seeks to engage Persky in discovery which extends beyond the apartment sale per se, and which is intended to lead to evidence of Persky's involvement in any alleged criminal conspiracy in the partnership case, principles of collateral estoppel bar such discovery. This is so because the issue of Persky's involvement in such criminal acts was actually litigated and was necessary to Judge Moran's holding, since without question such activities would have rendered Persky a "bad faith" purchaser, and Wilcher would have been entitled to have the apartment sale order rescinded. Because of the principle enunciated in *In Re Silverman, supra,* res judicata and collateral estoppel operate as a bar nut only to actual relitigation but also to discovery which can only lead to relitigation of closed matters. Although the examiner himself is not a trustee or otherwise a true party in interest and thus is not technically in privity with Wilcher, it is clear that the discovery sought from Persky could only lead to causes of action against Persky which have been foreclosed. Since this is so, the discovery sought is largely if not entirely irrelevant. This reinforces the conclusions earlier reached, that the proposed discovery far exceeds the scope of any legitimate Rule 2004 examination, and that the examiner has failed to show good cause for the subpoena.

For the reasons set forth herein it is hereby

ORDERED that the subpoena directed to Seymour H. Persky in this matter must be and hereby is quashed.