**In re CONTINENTAL FORGE CO., INC., a California corporation, Debtor.**

**Bankruptcy No. LA 85–04986–GM. Ancillary No. 86–00001E.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 4, 1987.

Thomas P. Agresti, Erie, Pa., for debtor.

John W. Draskovic, and Edward W. Goebel, Erie, Pa., for Erie Press Systems.

OPINION ON ERIE PRESS SYSTEMS' OBJECTIONS TO EXAMINATION UNDER RULE 2004

WARREN W. BENTZ, Bankruptcy Judge.

*Factual Background*

This matter came to be heard upon the objections filed May 9, 1986 by Erie Press Systems ("Erie") to the production of documents and information requested by the Debtor, Continental Forge Co., Inc. ("Continental") in the Subpoena issued May 1, 1986.

Continental contacted Erie sometime in 1979 indicating its interest in purchasing a 4,000 ton down-acting, open-housing type hydraulic forging press (the "Press"). Erie responded with a quotation which allegedly contained specifications, *inter alia,* that the cylinder platen ("cylinder") of the press would be of cast steel construction (Continental b.2). Continental asserts in its brief that Erie advised Continental that it had not in fact used a cylinder of cast steel, but that it had instead placed a cylinder of forged steel within the Press. The cylinder was in fact fabricated from rolled steel. Erie does not dispute that the cylinder was not made of cast steel. Indeed, Erie contends that the rolled steel fabrication yielded a superior cylinder and that the fact that it was fabricated of rolled steel was made known to Continental without objection.

The press was delivered to Continental in February of 1981. On or about February 22, 1986, the Press failed, according to Continental, when Continental attempted to operate the Press at its maximum rating of 4,000 tons of force. The failure appears attributable to cracks subsequently discovered in the cylinder.

Upon being advised of the failure, Erie immediately supplied Continental, on a confidential basis, with manufacturing drawings and information pertaining to the failed cylinder. Erie also offered to quote on repair of the cylinder but insisted upon assurance of payment if the work were performed. Continental declined that of-

fer. It engaged Charles Lucky as its design consultant, and entered into a contract with Japan Steel Works for construction of a replacement cylinder for a contract price of $271,270.

Continental now seeks to obtain drawings and specifications, not for the cylinder, but for each and every part of the Press, ostensibly to determine whether any remaining parts of the Press are defective.

Erie asserts that Charles Lucky is its competitor; that Japanese and German manufacturers, because of their low wage rates, dominate the U.S. market as to presses in the 2,000 ton range and the 10,000 ton range, but that they do not have the necessary technological expertise and experience to manufacture presses in the 4,000 ton range; and that the request for all manufacturing drawings of every piece and part of the Press, together with all design, specification and test information as to each piece, is not sought in good faith and is sought solely for the purpose of enabling Charles Lucky and/or Continental to enter into competition with Erie.

We note at this point that the parties hereto have consented to the consideration of the issue of the scope of a Rule 2004 examination without an evidentiary hearing; even though the affidavits submitted by the parties are contradictory, argumentative and raise numerous and substantial issues of fact.

*Discussion*

Those factual disputes are, however, immaterial since the requested materials are beyond the scope of a Rule 2004 examination irrespective of which parties' factual version of the transactions preceeding this dispute is most accurate. The relevancy of the requested materials ought to be weighed in the context of a civil law suit for breach of contract or misrepresentation rather than a search for assets in the Bankruptcy Court. Rule 2004 is not intended to be used as a vehicle for gathering confidential information for which no reasonable need is shown. Erie argued vehemently at the initial hearing on its objections that the real motive for seeking the various doc-

uments was to employ those documents to obtain information that would otherwise be unobtainable because of Erie's proprietary rights in information contained in these documents. Erie asserts that Continental intends, with the assistance of Mr. Charles Lucky, to use the information to gain a competitive advantage over Erie. The Court neither accepts nor rejects Erie's contention. It is apparent, however, that Continental has shown no reasonable need for the requested information. It follows that Continental's requests may not be in good faith, lending credence to Erie's assertion that Continental's purpose is solely to gain a competitive advantage.

The crucial issue is whether the requested documents are the proper subject of a Rule 2004 examination. Bankruptcy Rule 2004(a), (b) and (c) delineate the parameters of a Rule 2004 examination of documents respecting examination of persons and production as follows:

(a) *Examination on Motion.* On motion of any party in interest, the court may order the examination of any person.

(b) *Scope of Examination.* The examination of any person under this rule or of the debtor under § 343 of the Code may relate *only* to the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In an individual's debt adjustment case under Chapter 13 or a reorganization case under Chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consumating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.

(c) *Compelling Attendance and Production of Documentary Evidence.* The attendance of any person for examination and the production of documenta-

ry evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

It has repeatedly been held that the scope of a 2004 examination is unfettered and broad; *In re GHR Energy Corp.*, 33 B.R. 451 (Bankr.D.Mass.1983). The rule itself is peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards of an examination under F.R.C.P. 26; *In re Table Talk, Inc.*, 51 B.R. 143 (Bankr.D.Mass.1985). The examination is of necessity to a considerable extent a fishing expedition, *In re Foerst*, 93 F. 190 (S.D.N.Y.1899).

Erie does not dispute that it, and third parties in general, may be the subject of a 2004 examination. See *Chereton v. United States*, 286 F.2d 409 (6th Cir.1961).

The purpose generally of Rule 2004 is to enable parties in interest to locate assets of the debtor and to make those assets available for the creditors of the estate. While the purpose is broad, Rule 2004 is not without limits. The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *Matter of Wilcher*, 56 B.R. 428 (Bankr.N.D.Ill.1985), *In re Johns-Manville Corp.*, 42 B.R. 362 (S.D.N.Y.1984).

We note that Bankruptcy Rule 9016 makes Rules 45 of the Federal Rules of Civil Procedure applicable to bankruptcy cases under the Code. Rule 45, as far as inspection, examination and copying of documents is concerned, directs that the provisions of Rule 26 of the Federal Rules of Civil Procedure are applicable. Ultimately, the question is one of relevancy in the *pending action*. Clearly then, the Federal Rules contemplate that an action be commenced prior to the initiation of discovery. Continental may have a potential breach of contract cause of action against Erie. Under the Federal Rules, the desired discovery may not be allowed prior to the filing of the action. But even after the filing of such an action, the requested discovery would not be allowable because the requested information is not relevant to that cause of action. Even under the broader reach of Bankruptcy Rule 2004, the requested information is not relevant to any conceivably legitimate issue, i.e., neither the cause of action for the failed cylinder, nor the discovery and collection of assets of the debtor, nor the development of a plan of reorganization.

Continental urges a novel theory upon this Court. As we understand it, the failure of the cylinder, some five years after its purchase from Erie, allegedly because of Erie's negligence, suggests that some other component of the Press might also have been negligently constructed by Erie. Therefore, Continental argues, it should be entitled to examine all documents relating to the design and manufacture of each piece and part of the entire Press. This information is relevant, according to Continental, because the Press is essential to a viable Plan of Reorganization. We find the argument untenable. By analogy, if Continental owned a Kenworth tractor trailer that was necessary for Continental to ship its goods, and the truck had a crack in its engine block, the Court should permit, by virtue of Rule 2004, the debtor to discover documents relating to the design, testing and manufacture of the transmission or the carburetor. We are unaware of any theory of discovery, or any notion of relevance, which would permit so broad an inquiry. As the Court in *Wilcher*, supra, stated, "It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." In the Court's view, the right of Erie to privacy in its business affairs far exceeds any interest Continental may have in what appears to be proprietary information of Erie's. To permit Continental's request would be tantamount to a taking of property without just compensation and an affront to the sensibilities of the Court. The request of Continental will be denied and the objections of Erie are sustained. An appropriate order will be entered.