In re METIOM, INC., Debtor.

ePlus, Inc., Appellant,

v.

Bernard Katz, Creditor Trustee of Metiom, Inc., Appellee.

Misc. No. 04–M–47 (VM).

United States District Court, S.D. New York.

Dec. 15, 2004.

George R. Pitts, Dickstein, Shapiro, Morin & Oshinsky LLP, Washington, DC, Kenneth H. Frenchman, Dickstein, Shapiro, Morin & Oshinsky LLP, New York City, for appellants.

## DECISION AND AMENDED ORDER

MARRERO, Judge.

ePlus, Inc. ("ePlus"), a non-party in the bankruptcy proceedings of Metiom, Inc. ("Metiom"), appealed an order by the United States Bankruptcy Court for the Southern District of New York (Drain, U.S.B.J.) requiring it to submit to an examination pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004").[1] ePlus moved for a stay of the Bankruptcy Court's order pending the appeal. Because the appeal had not yet been assigned to a judge at the time that ePlus filed its motion for a stay, that motion came before this Court as a miscellaneous matter. By Order dated November 24, 2004, the Court denied ePlus's motion and indicated that its findings, reasoning and

---

1. Rule 2004 provides that, "[o]n motion of any party in interest, the court may order the examination of any entity.... The examination of an entity under this rule ... may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr.P. 2004.

conclusions would be detailed in a subsequent Decision and Order. Accordingly, for the reasons set forth below, ePlus's request for a stay pending appeal of the Bankruptcy Court's Order is denied.

## I. BACKGROUND [2]

Metiom filed a petition for bankruptcy under Chapter 11 of Title 11 of the United States Code on May 15, 2001. Sometime in 2001,[3] ePlus and Metiom commenced discussions concerning the possible purchase of Metiom's assets by ePlus. In August 2001, Metiom employees attempted to install Metiom software on ePlus's computer servers. Metiom contends, and ePlus denies, that Metiom's software was successfully installed on ePlus's computer servers.

The parties also disagree regarding the results of the discussions about ePlus's possible purchase of Metiom's assets. ePlus maintains that it withdrew its offer to purchase Metiom's software and accounts after having conducted due diligence. (*See* Appellant's Mem. at 1–2; Geltner Decl. at ¶ 2.) Metiom, however, indicates that ePlus did not withdraw its offer, claiming that "[t]o date, ePlus has not paid any part of the $2.1 million purchase price to Metiom" and that "Metiom may have claims for breach of contract . . . against ePlus." (Appellee's Mem. at 3.)

Based on the contention that Metiom had obtained information indicating that ePlus had converted and misappropriated its software and other assets during the sale negotiations, Bernard Katz, Metiom's creditor trustee in the bankruptcy proceeding ("Metiom"), applied to the Bankruptcy Court for an order requiring ePlus to submit to an examination and produce documents pursuant to Rule 2004. Metiom sought to discover documents "relating, among other things, to ePlus' initial efforts which were purportedly directed towards purchase and thereafter to misappropriate and convert the Debtors' software and other assets and the identification and investigation of certain potential claims against

2. For the facts stated herein, the Court relied on the Memorandum of Appellant ePlus, Inc. in Support of Motion for Stay Pending Appeal (undated) ("Appellant's Mem."), the Declaration of Michael E. Geltner, dated November 18, 2004 with Exhibits 1 through 7 ("Geltner Decl."), the Memorandum of Law of Bernard Katz, Creditor Trustee of Metiom, Inc. in Opposition to Motion by ePlus, Inc. for Stay Pending Appeal, dated November 19, 2004 ("Appellee's Mem."), and the Index of Documents Related to ePlus, Inc., including Exhibits 1 through 14 ("Appellee's Index"). Except where specifically referenced, no further citation to these sources will be made.

3. The parties' statements as to when ePlus and Metiom commenced consideration of ePlus's purchase of Metiom's assets appear to differ. According to ePlus, "[i]n 2001, after the bankruptcy, ePlus considered the purchase of Metiom's software and accounts." (Appellant's Mem. at 1; *see also* Geltner Decl. at ¶ 2 ("In July 2001, ePlus submitted to Metiom, Inc . . . ., then in bankruptcy, a letter

agreement to acquire Metiom's assets, contingent on due diligence.")) According to Metiom, on the other hand, "[p]rior to the filing of the [bankruptcy] petition, Metiom and ePlus entered into a Confidentiality Agreement to protect Metiom's [intellectual property] . . . in connection with the sale of Metiom's assets to ePlus." (Appellee's Mem. at 2.) Metiom has included a copy of the Confidentiality Agreement as Exhibit 6A in Appellee's Index, but the attached copy is not signed or dated. Also, Metiom indicates elsewhere that negotiations regarding the sale of its assets to ePlus may not have commenced until June 2001 (*i.e.*, after the filing of the bankruptcy petition). (*See* Application of Bernard Katz, as Creditor Trustee of Metiom, Inc., for an Order Compelling Examinations and Production of Documents Pursuant to Fed. R. Bankr.P. 2004 ("Katz Application") (included in Appellee's Index as Exhibit 1) at ¶ 6 ("Beginning in May or June 2001, the Debtor and ePlus entered into negotiations for the sale of substantially all of the assets of the Debtor.").)

ePlus and other third parties." (Katz Application at ¶ 1.) The Bankruptcy Court entered an order on November 25, 2003 granting that application (the "Rule 2004 Order"). Metiom and ePlus then entered into discussions to attempt to resolve the discovery dispute on a consensual basis.

On October 20, 2004, ePlus terminated those discussions and elected to proceed with a contested hearing on its motion to set aside or limit the Rule 2004 Order. The Bankruptcy Court held a hearing on ePlus's motion on November 4, 2004, at which it denied ePlus's motion.

On November 10, 2004, ePlus filed a Notice of Appeal from the Bankruptcy Court's denial of its motion. ePlus also moved for a stay of the Rule 2004 Order pending the appeal. At a hearing on November 17, 2004, the Bankruptcy Court denied ePlus's motion for a stay pending appeal, though it did grant a temporary stay until November 24, 2004 to allow ePlus time to seek a longer stay before this Court. ePlus filed a motion with this Court seeking a stay of the Rule 2004 Order on November 19, 2004. Metiom filed opposition papers on the same day. The Court denied ePlus's motion for a stay on November 24, 2004. The reasons for the denial are set forth below.

## II. *DISCUSSION*

■■■ Fed. R. Bankr.P. 8005 provides that a motion for a stay of a bankruptcy court order may be made to the district court pending an appeal of the order. *See* Fed. R. Bankr.P. 8005. In determining whether or not to grant such relief, the district court must consider: (1) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; (2) whether the movant will suffer irreparable injury without a stay; (3) whether any party will suffer substantial injury if a stay is issued; and

(4) whether public interests may be implicated. *See In re Deep,* 288 B.R. 27 (N.D.N.Y.2003). The Court finds that these factors weigh against granting a stay.

## A. *LIKELIHOOD OF SUCCESS ON THE MERITS*

■■■ A bankruptcy court's decision to order a Rule 2004 examination is reviewed for abuse of discretion. *See In re Enron Corp.,* 281 B.R. 836, 840 (Bankr.S.D.N.Y. 2002) (noting that the bankruptcy court "has the discretion to grant a request for a 2004 examination" (citations omitted)); *see also In re Dinubilo,* 177 B.R. 932, 939 (E.D.Cal.1993), *called into doubt on other grounds by In re Symington,* 209 B.R. 678 (Bankr.D.Md.1997), ("A bankruptcy court's decision to order a Rule 2004 examination is reviewed under an abuse of discretion standard." (citing *In re Hammond,* 140 B.R. 197, 200 (S.D.Ohio 1992); *In re Hawley Coal Mining Corp.,* 47 B.R. 392, 393 (S.D.W.Va.1984); 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 2004.04 (15th ed.1993) ("Collier on Bankruptcy"))). "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. A [bankruptcy] court [also] abuses its discretion if the reviewing court has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached based on all the appropriate factors." *In re Williams,* 224 B.R. 523, 529 (2d Cir. BAP 1998) (citations omitted). Therefore, in order to find that ePlus has a substantial possibility of success on the merits of its appeal, this Court would have to find that there is a substantial possibility that the Bankruptcy Court based its decision on an erroneous view of the law or clearly erroneous factual findings, or that it made a clear error of judgment in denying ePlus's motion to set

aside or limit the Rule 2004 examination. The Court finds that there is not a substantial possibility that the Bankruptcy Court committed such errors.

ePlus argues that the Bankruptcy Court failed to apply the correct legal standard in ordering the Rule 2004 examination. According to ePlus, Metiom was required to make "a showing of good cause," Appellant's Mem. at 3, in support of its request for a Rule 2004 order, but failed to do so.[4] ePlus contends that "Metiom never made a record to support a good cause determination against ePlus, nor did Judge Drain require a record or find good cause." (Appellant's Mem. at 5.)

■ The Court agrees with ePlus, and Metiom does not deny, that the Bankruptcy Court was required to make a finding of good cause in order to uphold its Rule 2004 order. As the court explained in *Matter of Wilcher:* "[a]lthough a Rule 2004 examination may be ordered ex parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery." 56 B.R. at 434. The Court is not persuaded, however, that there is a substantial possibility that ePlus will be able to demonstrate on appeal that the Bankruptcy Court failed to apply this legal standard.

■ "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue

hardship or injustice." *In re Dinubilo,* 177 B.R. at 943 (citing *Boeing Airplane v. Coggeshall,* 280 F.2d 654, [670] (D.C.Cir. 1960); *In re Wilcher,* 56 B.R. at 434). In its argument that the Bankruptcy Court did not make a finding of good cause, however, ePlus does not directly contend that the Rule 2004 examination is not necessary to establish Metiom's claim against it or that the denial of such an examination would not cause Metiom undue hardship or injustice. Instead, ePlus focuses on the nature of the evidence on which the Bankruptcy Court relied in determining that an examination was proper.

The Bankruptcy Court based this determination on the following three evidentiary factors: (1) an email dated August 21, 2001 from a Metiom salesman to ePlus stating that some of Metiom's software had been installed on ePlus's computers (the "Metiom email"); (2) Metiom's counsel's representation that other Metiom witnesses had stated that the software had been installed; and (3) the Bankruptcy Court's determination that ePlus's evidence in support of its claim that the software had never been installed was ambiguous. (Appellant's Mem. at 4–5; *see also* Transcript of Evidentiary Hearing in re Memorandum of Law in Support of Motion to Limit Rule 2004 Examination of ePlus, Inc., dated November 4, 2004 ("Nov. 4 Tr.") at 8, 13–14, 25.) ePlus argues that Judge Drain's reliance on these forms of evidence demonstrates that he did not "require a good cause showing in any meaningful sense,

---

**4.** ePlus states that a good cause showing is required in cases where "the trustee seeks to use the rule to inquire into a *non-party."* (Appellant's Mem. at 3.) The case that ePlus cites in support of this proposition, however, indicates that the circumstance that requires a showing of good cause is not the status of the subject of the requested examination as a non-party, but that party's having made a motion in opposition to the examination. *See*

*Matter of Wilcher,* 56 B.R. 428, 434 (Bankr. N.D.Ill.1985). The precise condition that triggers the requirement that the party seeking a Rule 2004 examination show good cause for that examination, however, is not relevant to the Court's reasoning here, since the Court agrees with ePlus that a showing of good cause was required. In addition, Metiom does not argue that it was not required to make such a showing.

because he required nothing under oath from Metiom," instead "accept[ing] the Metiom salesman's email at face value even though there were no verifying or explaining affidavits" and making "only a finding of confidence in Metiom's lawyers." (Appellant's Mem. at 5 (citations omitted).) ePlus further argues that Judge Drain failed to apply the good cause standard because he "seems to have felt ePlus should conclusively disprove opportunity to copy the software in its declarations … and thereby placed no burden on the party seeking the Rule 2004 examination." (*Id.*) The Court finds that Judge Drain's reliance on these factors does not demonstrate that he failed to require or make a finding of good cause.

First, ePlus does not cite, nor is the Court aware of, any authority to support the claim that a showing of good cause in support of a Rule 2004 examination requires testimony or written statements under oath. On the contrary, at least one court has rejected the argument that an attorney's representations alone are not sufficient to support a finding of good cause. In *In re Dinubilo*, the court considered the appellants' argument that a "Rule 2004 examination was improper because the Case Trustee failed to show good cause for the examination." 177 B.R. at 943. Like ePlus, the appellants in that case argued that "the Case Trustee did not satisfy this burden [to show good cause] because the only evidence he presented was the unsupported statement of his attorney that discovery was necessary to respond to [the appellant's] motion [to remove the Case Trustee]." *Id.* Although the court in *Dinubilo* did not clearly ex-

plain the basis for its finding,[5] it concluded that "[g]ood cause was presented" and that there was no abuse of discretion "because of the colorable justification presented." *Id.* Given the absence of any authority suggesting that oral or written statements must be made under oath in order to support a finding of good cause for a Rule 2004 examination, and the existence of case law to the contrary, this Court finds no reason to doubt the soundness of the Bankruptcy Court's decision to rely on the representations of Metiom's counsel and the Metiom email in determining that there was good cause for the Rule 2004 examination.

In addition, the Court disagrees with ePlus's claim that Judge Drain "placed no burden" on Metiom to demonstrate good cause in support of its request for a Rule 2004 examination. At a hearing on ePlus's motion to limit the Rule 2004 examination on November 4, 2004 (the "November 4th hearing"), Judge Drain inquired into the basis of Metiom's belief that its software had been installed on ePlus's computers. For instance, in response to Metiom's claim that "the correspondence … shows that Metiom went to ePlus' offices … and clearly installed the Metiom source code and other codes onto the ePlus computer system," the Court inquired: "Well, where is that? Is that this August 21 email? … Where does it clearly show that?" (Nov. 4 Tr. at 8.) Judge Drain further inquired about "[w]hat sort of interviewing of [Metiom's former employees who were involved with the project with ePlus]" Metiom's attorneys had done "to give [them] a good faith belief that there may be a claim

---

**5.** The *In re Dinubilo* court simply noted that the attorney's declaration asserted that the individuals who were the subjects of the Rule 2004 examination possessed information relevant to the contested issue (a motion to remove the case trustee) and that the examina-tion sought information relevant to that issue. Upon noting the respects in which the information sought was relevant to the contested issue, the court declared that good cause had been presented. *See In re Dinubilo*, 177 B.R. at 943.

here?" (*Id.* at 12.) He asked the attorneys: "Have you had any sort of separate indication from anyone who was involved in the transaction from the Metiom side that they did in fact reveal confidential intellectual property to ePlus? . . . [Have you] gone back to the former employee [of Metiom] and said are you sure or anything like that?" (*Id.* at 13.) Metiom replied to all of these questions in the affirmative and described the statements of the Metiom employees it had interviewed in some detail.

Judge Drain's questioning of Metiom's attorneys at the November 4th hearing demonstrates that he did place at least some burden on Metiom to show good cause for the Rule 2004 examination.

In addition, Judge Drain cited the good cause standard both in his initial order directing a Rule 2004 examination and in his order denying ePlus's motion to set aside or limit the Rule 2004 examination. *See* Order Directing Examination and Production of Documents Pursuant to Fed. R. Bankr.P. 2004, dated November 25, 2003 (included in Appellee's Index as Exhibit 2); Order Denying Motion to Set Aside or Limit Rule 2004 Examination of ePlus, Inc., dated November 4, 2004 (included in Appellee's Index as Exhibit 8).

■ In addition to finding that there is no substantial possibility that the Bankruptcy Court erred by relying on unsworn statements or that it failed to place any burden of proof on Metiom, the Court finds that there is no substantial possibility

that the Bankruptcy Court abused its discretion in its substantive determination that Metiom in fact had good cause to conduct a Rule 2004 examination. As noted above, good cause may be found if "the examination is necessary to establish the claim of the party seeking the examination, or if the denial of such request would cause the examiner undue hardship or injustice." *In re Dinubilo,* 177 B.R. at 943 (citing *Boeing Airplane v. Coggeshall,* 280 F.2d 654, [670] (D.C.Cir.1960); *In re Wilcher,* 56 B.R. at 434). In rejecting ePlus's proposal that Metiom obtain the sought-after information through depositions of ePlus employees, for instance, the Bankruptcy Court explained that, given that "a number of people" would have to be deposed, "when you start counting up the depositions, and you take into account what [Rule] 2004 is meant to do,[6] and the resources of the debtor's estate, I think it's actually more productive and less burdensome to all parties simply to let them have access to the information [requested in the Rule 2004 application]." (Nov. 4 Tr. at 28.) Implicit in these remarks is the finding that, even if a Rule 2004 examination of the requested information[7] is not strictly necessary to establish a potential claim against ePlus, a refusal to order such an examination would result in undue hardship to Metiom, if not injustice. For all of these reasons, the Court finds that there is no substantial possibility that the Bankruptcy Court abused its discretion in refusing to set aside the Rule 2004 examina-

---

6. The purpose of a Rule 2004 examination is to assist a trustee in a bankruptcy proceeding to "learn quickly about the debtor entity" so that he or she may "maximize the realization of the debtor's estate" and "discover the existence and location of assets of the estate." *In re Dinubilo,* 177 B.R. at 940 (citing *Zydney v. New York Credit Men's Ass'n,* 113 F.2d 986 (2d Cir.1940); 2 Collier on Bankruptcy

¶ 343.04; *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr.E.D.N.Y.1991)).

7. Metiom requested seventeen items in its Rule 2004 application, consisting generally of documents in ePlus's possession that relate to Metiom and to the subject software, and the subject software itself. (*See* Katz Application at A–4 to A–5.)

tion, and hence that there is no substantial possibility that ePlus's appeal will succeed.

## B. *OTHER FACTORS*

 Because the movant's "'failure to satisfy one prong of the standard for granting a stay pending appeal [of a bankruptcy court order] dooms the motion,'" *In re Deep*, 288 B.R. at 30 (quoting *Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency*, No. 02–CV–492, 2002 WL 31399797, at *2 (N.D.N.Y. Oct. 24, 2002)), the Court's determination that there is no substantial possibility that ePlus would succeed on the merits of its appeal provides a sufficient basis for denying ePlus's motion. Nonetheless, the Court will briefly review the other factors that are to be considered in determining whether to stay a bankruptcy court order.

### 1. *Irreparable Harm to ePlus if no Stay is Granted*

 ePlus argues that it will suffer irreparable harm if no stay is granted because it will be forced to reveal "its source code and proprietary business methods" to an examiner who "will presumably be a potential ePlus competitor" and to lawyers "who will be in a position to use ePlus's proprietary information for their clients' benefit." (Appellant's Mem. at 6.) ePlus contends that the Bankruptcy Court's order that the examination be subject to a confidentiality agreement would not provide adequate protection and that "[v]iolations will likely be unproveable." (*Id.*)

The Court, however, finds no reason to question the Bankruptcy Court's determination that "the potential for harm to ePlus is substantially if not entirely reduced or eliminated," (Transcript of Evidentiary Hearing in re Memorandum of Law in Support of Motion to Limit Rule 2004 Examination of ePlus, Inc., dated November 17, 2004 ("Nov. 17 Tr.") at 9), by the proposed confidentiality agreement. Although violations of such an agreement may be difficult to detect, courts have typically found confidentiality agreements sufficient to protect parties subject to examinations from the use of information gained in those examinations for improper competitive purposes. *See, e.g., Federal Open Market Committee v. Merrill*, 443 U.S. 340, 363 n. 24, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (citations omitted) ("[O]rders forbidding any disclosure of trade secrets or confidential information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel."); *Rywkin v. New York Blood Center*, No. 95 Civ. 10008, 1998 WL 556158, at *5 (S.D.N.Y. Aug. 31, 1998) (citations omitted) ("[C]ourts often require disclosure of trade secrets even in litigation with competitors, provided appropriate precautions are observed."); *Julius M. Ames Co. v. Bostitch*, 235 F.Supp. 856, 857 (S.D.N.Y.1964) (denying a motion to vacate interrogatories and cross-interrogatories based on the court's determination that any "improper and unfair use of the material to be produced" could be adequately prevented by "a proper protective order."); 8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, *Federal Practice and Procedure* § 2043 (2d ed.1994 & Supp.2004) (citations omitted) ("It is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure."). Therefore, the Court finds that ePlus is not likely to suffer irreparable harm as a result of a 2004 examination.

### 2. *Injury to Other Parties if a Stay is Granted*

 As the Bankruptcy Court pointed out, other parties will be injured if the stay

is granted. In particular, Judge Drain noted his concern "that creditors who have been waiting for their distributions in the case are, but for this litigation, essentially in a position to get such distribution .... [and] that the District Court determination in this matter ... could be prolonged, which obviously is contrary to the purpose of Rule 204[sic] in the liquidation of this estate." (Nov. 17 Tr. at 9–10.) In light of the fact that, according to the Bankruptcy Court, this appeal is a primary factor in delaying the distribution to Metiom's creditors of funds they are owed, the grant of a stay pending appeal would directly cause further delay of that distribution. In addition, litigation of the appeal would further deplete the resources available to be distributed to the creditors. Therefore, a stay of the 2004 order would likely harm Metiom's creditors.[8]

### 3. The Public Interest

■ ePlus has also failed to demonstrate that the public interest favors the granting of a stay in this case. ePlus contends that "[t]he public interest lies in a proper resolution of the issues on appeal," without addressing the competing "public interest in the expeditious administration of bankruptcy cases [which] is impaired by obstructing a trustee's efforts to collect, liquidate and distribute assets to creditors of the estate." In re MGL Corp., 262 B.R. 324, 330 (Bankr.E.D.Pa.2001) (citing Kozyak v. Poindexter (In re Financial Federated Title & Trust, Inc.), 252 B.R. 834, 839 (Bankr.S.D.Fla.2000)). The public interest

in resolving the issues here on appeal is diminished by the Court's finding that there is no substantial possibility of success on the merits of the appeal. In addition, as the Bankruptcy Court explained, "the prolongation of this discovery dispute, to the trustees' detriment and the estate's detriment, really is inimical to the functioning of this bankruptcy case and the expectation of the creditors to finally get paid.... The trustee has to decide whether to use the money that he has as, in effect, a war chest to conduct litigation against ePlus or to distribute the money to creditors." (Nov. 17 Tr. at 9–10.) This Court finds that the public interest in the expeditious administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal.

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated November 24, 2004 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that the motion of appellant ePlus, Inc. for a stay of the Bankruptcy Court's order that it submit to an examination pursuant to Fed. R. Bankr.P.2004 in

---

8. Judge Drain explained that he decided to grant a brief stay of the 2004 order for one week to allow ePlus "to get sufficient confirmation from the District Judge that this can be decided promptly, i.e. in a matter of weeks as opposed to months...." (Nov. 17 Tr. at 11.) He further stated that "[t]he only chance to be assured that type of determination is through seeking a stay at the District Court level, because the judge then can review the record quickly in the context of deciding a motion for a stay and give the parties an idea where they stand." (Id.) As noted above, this case was assigned to this Court as a miscellaneous matter because the appeal had not yet been assigned to a judge. As a result, this Court cannot provide the parties with any indication as to how quickly the appeal would ultimately be decided.

relation to the bankruptcy of Metiom, Inc. is DENIED.

**SO ORDERED.**