In re Andrew Earl KELTON, Debtor.

No. 07–11672.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

May 13, 2008.

Lee Ringler, Lee Ringler Law Offices, Augusta, GA, for Debtor.

## ORDER

SUSAN D. BARRETT, Bankruptcy Judge.

The following matters are before me: Debtor's Motion to Strike Auditor's Report of Material Misstatement; United States Trustee's Motion for Rule 2004 Examination; and Debtor's Motion for Protective Order. After having considered the motions, Debtor's Motion to Strike is DENIED, United States Trustee's Motion for

Rule 2004 Examination is GRANTED, and Debtor's Motion for Protective Order is DENIED. A separate order will be entered granting the Trustee's request for a Rule 2004 exam.

### FINDINGS OF FACT

Andrew Earl Kelton ("Debtor") filed a chapter 13 petition on September 18, 2007. The order confirming his bankruptcy plan was entered on November 26, 2007. Under the newly instituted audit requirements of section 603 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23, 122 (2005) ("BAPCPA"), Debtor's case was selected for auditing. Debtor supplied the requested documentation to the auditor. The auditor's report revealed a "material misstatement" in Debtor's filings. Specifically, the auditor reported Debtor's Form 22C understated his income by $1,204.88. (Audit Report, Dckt. No. 42.) Debtor filed a motion to strike the report, arguing the audit report was erroneous. (Mot. to Strike, Dckt. No. 44.) Debtor argued further, even if the auditor's calculation was correct, the misstatement was not "material" and therefore the finding should be stricken. *Id.* The United States Trustee ("UST") objected to Debtor's motion. (Obj. to Debtor Mot. to Strike, Dckt. No. 46.)

Based on Debtor's testimony at the hearing, the auditor's analysis of Debtor's Form 22C income calculation is correct, and Debtor's Form 22C erroneously reflects income of $5,884.12, rather than $7,089.00. At the hearing, the UST also questioned Debtor about several other apparent anomalies in his schedules, specifically:

- Debtor's schedule B reflects a savings account valued at $600.00, but the actual balance in this account at the time of filing was approximately $1,600.00.
- Debtor's schedule B fails to disclose a jointly held account at Bank of America.
- Debtor's schedule B neglects to disclose a life insurance policy with cash value.
- Debtor's schedules reflect "2 annuities deducted from wages" with an "unknown" value. Debtor testified the annuities have a combined value of approximately $32,000.
- Debtor's schedules reflect an "ERISA-qualified Teacher's Retirement Plan" with no value. Debtor testified the value of the plan is approximately $56,000.00.
- Debtor's Statement of Financial Affairs fails to disclose Debtor's income for 2005 and 2006.

The UST alleges he made repeated attempts through informal means to obtain additional information from Debtor regarding these anomalies. According to the UST, Debtor refuses to respond with information or documentation regarding the annuity, the life insurance policy and its cash value, and the balance of the Bank of America account on the petition date[1]. (Mot. For Examination Under Rule 2004, Dckt. No. 72, ¶ 10.) In response, Debtor filed a motion for a protective order, alleging the UST's request duplicates what Debtor previously provided in connection with the audit and is "unduly burdensome,

---

1. The UST's motion for 2004 examination specifically requests Debtor bring: bank statements relating to the Bank of America account for the time period of January 1, 2007 through December 31, 2007; all documents related to Debtor's annuity, including but not limited to any documents showing the annuity is exempt or otherwise not property of the estate; and all documents relating to any life insurance policy owned by Debtor. Mot. For Examination Under Rule 2004, Dckt. No. 72.

retaliatory, and oppressive." (Debtor's Mot. for Protective Order, Dckt. No. 76.)

## CONCLUSIONS OF LAW

### Debtor's Motion to Strike the Audit Report.

■ Section 603 of BAPCPA introduced an audit system, whereby individual chapter 7 or 13 bankruptcy filings may be selected by the United States Trustee to undergo an audit by a professional accountant to determine the accuracy, veracity and completeness of the filings. BAPCPA, Pub.L. No. 109–8, § 603(a)(1), 119 Stat. 23, 122 (2005), *as reprinted* in E–2 Collier on Bankruptcy at App. Pt. 10–268 (15th rev. ed.2007). Random audits of at least one out of every 250 filings are conducted, and audits also are conducted on debtors whose schedules "reflect greater than average variances from the statistical norm of the district." *Id.* at § 603(a)(2).

■ Once the case is selected for audit, the United States Trustee gives notice of the selection to the bankruptcy court, the debtor and the auditor. Thereafter, the auditor initiates the process by sending requests for document production to the debtor. *See In re Moreland,* 2007 WL 1830837, at *1 (Bankr.C.D.Ill.2007). Assuming the debtor cooperates with the auditor,[2] the auditor reviews debtor's records, bankruptcy petition and schedules. "Such audits shall be in accordance with generally accepted auditing standards and performed by independent certified public accountants, or independent licensed public accountants." BAPCPA, Pub.L. No. 109–8, § 603(a)(1), 119 Stat. 23, 122 (2005), *as reprinted* in E–2 Collier on Bankruptcy at App. Pt. 10–268 (15th rev. ed.2007). By statute,

(A) The report of each audit ... shall be filed with the court and transmitted to the United States trustee. Each report shall clearly and conspicuously specify any material misstatement of income or expenditures or of assets identified by the person performing the audit. In any case in which a material misstatement of income or expenditures or of assets has been reported, the clerk of the ... bankruptcy court ... shall give notice of the misstatement to the creditors in the case.

(B) If a material misstatement of income or expenditures or of assets is reported, the United States trustee shall—

(i) report the material misstatement, if appropriate, to the United States Attorney pursuant to section 3057 of title 18; and

(ii) if advisable, take appropriate action, including but not limited to commencing and adversary proceeding to revoke the debtor's discharge pursuant to section 727(d) of title 11.

28 U.S.C. § 586(f)(2).

In the current case, Debtor argues the Court should strike the auditor's report because Debtor did not misstate his income on his Form 22C, and even if there was a misstatement, it is not material because Debtor's disposable income remains negative even with the auditor's calculation.

■ The instructions on Form 22C provide:

[a]ll figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before

**2.** Section 521 requires debtors to cooperate with auditors and to surrender any requested records. 11 U.S.C. § 521(a)(3)-(4).

the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line.

*See* Form 22C, Dckt. No. 1, line 1.

Form 22C is used in calculating two important BAPCPA concepts "current monthly income" and "disposable income." *See* Form 22C, Dckt. No. 1, Lines 2, 20, and 58, respectively. This income calculation instruction follows the statutory definition of "current monthly income" ("CMI") which is calculated by adding up all income of the debtor over the last six months, starting with the last whole month prior to filing, and dividing by six. *See* 11 U.S.C. § 101(10A).

■ Debtor's counsel asserts a textual argument involving the terms "receives" and "derived." He argues his calculation is correct because the Code defines CMI as "the average monthly income from all sources that the debtor *receives* ... without regard to whether such income is taxable income, *derived* during the 6–month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case...." 11 U.S.C. § 101(10A) (emphasis added). Counsel argues the definition of "derive" is "to take or receive, especially from a source." *Webster's Third New International Dictionary* 608 (2002). Debtor's counsel further notes the etymology of "derive" is from Latin "de" and "rivare," meaning literally "of the stream." *Id.* Thus, in counsel's view, the income must

not only be actually received during the six month period to be included in the CMI calculation, the *source* of the income also must occur in the period. In other words, income must be received *and* earned during the six month period.

In the current factual situation, Debtor's counsel's argument is misplaced because the income reflected in the auditor's report was both "received" and "derived" during the applicable six month period. Debtor testified he is a salaried employee, paid at the end of each month, and that his paychecks are for services rendered during the given month. Thus, Debtor's income coincides with services rendered to his employer for each month. Therefore, any possible distinction between "received" and "derived" does not apply in the current case.

Debtor filed his bankruptcy petition on September 18, 2007. Therefore, his reported income should reflect an average of all income received during the period from March 1, 2007 through August 31, 2007. Debtor's pay stubs reflect receipt of the following income:

| Pay Date | Amount |
|---|---|
| March 31, 2007 | $ 7,229.30 |
| April 30, 2007 | $ 7,205.12 |
| May 31, 2007 | $ 7,591.93 |
| June 30, 2007 | $ 6,769.97 |
| July 31, 2007 | $ 6,769.97 |
| August 30, 2007 | $ 6,967.70 |
| **Total** | $42,533.99 |

Averaging the total income received of $42,533.99 over six months returns income of $7,089.00; however, Debtor's Form 22C reflects income of $5,884.12 [3]. Therefore, as

---

**3.** Debtor's calculation appears to stem from an improper reading of Debtor's pay advices. In support of his motion to strike, Debtor filed a copy of his pay advices for August 2007 and March 2007. (Mot. to Strike Ex. A, Dckt. No. 44.) The August 31st pay advice reflects "Gross Earnings YTD" of $56,704.90. The March 31st pay advice reflects "Gross Earn-

ings YTD" of $21,400.21. Subtracting these two numbers and dividing by six yields a result of $5,884.12, the number Debtor reported as his income on Form 22C. However, the amount reflected in the "Gross Earnings YTD" on the March 31st stub is *inclusive* of Debtor's March earnings. Thus, when Debtor subtracted the March year-to-date earnings

the auditor reported, Debtor misstated his income on Form 22C by $1,204.88.

■ Debtor also argues the misstatement is not material since it has no effect on the outcome of Form 22C. Debtor's Form 22C reflects a "disposable income" of negative $1,719.09.[4] If Debtor had properly calculated his income, Debtor's "disposable income" is negative $514.21. Debtor argues since the outcome of the "disposable income" calculation is negative even using the auditor's income number, the misstatement of income is immaterial and should be stricken. I disagree.

■ Accurate disclosure of a debtor's financial situation is perhaps the primary duty of debtors seeking relief under the Bankruptcy Code. *See* 11 U.S.C. § 521 (disclosure of debtors' creditors, assets, liabilities, income and expenditures is the first on the list of debtor's duties). The bankruptcy discharge is reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Inaccurate or incomplete information deprives the court, the United States Trustee, the private trustee, and creditors of adequate information to decide whether to conduct further investigation, recover assets, or seek or impose relief against the debtor." United States Dept. of Justice Executive Office for United States Trustees, *Public Report: Debtor Audits by the United States Trustee Program Fiscal Year 2007* at 3 (April 2007), *available at* http://www. usdoj.gov/ust/eo/public_affairs/reports_studies/docs/Debtor_Audit_ Report_FY2007.pdf ("UST Report on Debtor Audits"). The auditor is not tasked with predicting how misstatements might effect

Debtor's calculations or the effects thereof. Rather, the auditor is to "indicate [ ] the audit produced information that challenged the accuracy, veracity, and completeness of a debtor's petition, schedules, or other filed bankruptcy documentation." *Id.* Debtor declared under penalty of perjury that his Form 22C income was $5,884.12, when, in fact, his Form 22C income was $7,089.00. To date, Debtor has failed to amend his Form 22C to correct this misstatement, and the resulting calculations. This is a material misstatement of income of which the Court, the UST and creditors should be aware.

■ Furthermore, auditors are independent contractors, hired by the United States Trustee to conduct the statutorily required audits. 28 U.S.C. § 586(f)(1). Auditors are governed by regulations promulgated by the United States Trustee program. The auditors are required to maintain their independence in performing the audit. Debtor Audit Standards, 71 Fed.Reg. 58,005 (2006) (Debtor Audit Standard No. 3). Furthermore, "[s]ufficient evidence must be obtained to provide a reasonable basis for the conclusion expressed in the report filed with the court." *Id.* (Debtor Audit Standard No. 6). "The report shall clearly and conspicuously state the conclusion as to the presence or absence of material misstatements." *Id.* (Debtor Audit Standard No. 8); *See also* 28 U.S.C. § 586(f)(2)(A). Thus, the audit standards require independent auditors to make a clear and conspicuous statement regarding the presence of a material misstatement based on sufficient evidence. Auditors are empowered to make a conclu-

---

figure, he *removed* the March earnings from his income calculation. Therefore, Debtor's Form 22C calculation reflects only five months of income, averaged over a six month period. To include the March 2007 income

in his Form 22C, Debtor should remove his March 2007 pay.

**4.** Disposable income is reported on line 58 of Form 22C.

sion as to the materiality of any misstatements identified during the audit, and report the conclusion in the audit report.

■ Although the auditor is empowered to make a conclusion as to the materiality of misstatement in the audit report, the audit report is precisely what its name implies, a report. The audit report itself clearly states it is not a legal conclusion and does not require any specific action:

> Whether the findings contained in the report are supported by sufficient evidence under the application of the proper legal standard is a question for the courts. Further, the findings contained in the report neither require the United States Trustee Program or other parties-in-interest to take, nor preclude these parties from taking, legal action in or relating to this case, including with respect to matters not discussed in this report.

(Audit Report, Dckt. No. 42, at 2.)

The report, in and of itself has no other effect. The only event required to occur upon filing of a report identifying a material misstatement is for the clerk to notify creditors of the report. 28 U.S.C. § 586(f)(2)(A). After receiving the report, creditors and/or the UST may pursue various courses of action. For example, if a report of material misstatement is filed,

> [T]he United States Trustee determines what action is appropriate based on the material misstatement(s) and may pursue a variety of actions depending on the

circumstances in the case, including denial of discharge, revocation of discharge, or reporting the material misstatement to the U.S. Attorney. In many instances, the United States Trustee may take no action on a Report of Audit based on a number of factors, including whether the debtor corrected the error (e.g., filed amended schedules) or whether the material misstatement was intentional.

*UST Report on Debtor Audits* at 3; *See also* 28 USC § 586(f)(2)(B).

For these reasons, I find the auditor's report properly identifies a material misstatement in Debtor's Form 22C. Debtor's understatement of his income appears to be the exact situation the audit system was designed to discover. Therefore, Debtor's motion to strike the audit report is denied.

### UST's Motion for Rule 2004 Exam and Debtor's Motion for Protective Order.

Subsequent to the hearing on Debtor's motion to strike the audit report, the UST filed a motion to examine the Debtor under Rule 2004.[5] The motion reflects the purpose of the requested Rule 2004 examination is to further investigate many of the apparent anomalies in Debtor's filings. The UST's motion also seeks the production of documents related to said anomalies. Contending the request for a 2004 exam is simply an effort to harass Debtor, Debtor moves for a protective order.

■ "The general rule is that the scope of a Rule 2004 examination is very

---

**5.** Bankruptcy Rule 2004 states in relevant part:

(a) EXAMINATION ON MOTION. On motion of any party in interest, the court may order the examination of any entity.

(b) SCOPE OF EXAMINATION. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition

of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. . . .

(c) COMPELLING ATTENDANCE AND PRODUCTION OF DOCUMENTS. The attendance of an entity for examination and for the production of documents . . . may be compelled.

Fed. R. Bankr.P.2004.

broad and great latitude of inquiry is ordinarily permitted." *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr.N.D.Ill.1985). The primary purpose of a Rule 2004 examination is for "revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining whether wrongdoing has occurred. In this regard, courts have recognized that Rule 2004 examinations are ... in the nature of fishing expeditions." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr.S.D.N.Y.2002) (internal quotations and citations omitted). However, there are limits to Rule 2004 examinations. Courts have denied motions for Rule 2004 examinations when:

- the purpose is to abuse and harass, *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D.Wis.1984) (noting Rule 2004 exams cannot be used to harass, but finding no harassment in the facts before the court);

- the examination seeks to elicit information unrelated to debtor's financial affairs or the administration of the debtor's estate, *In re Enron Corp.*, 281 B.R. at 840, *Matter of Wilcher*, 56 B.R. at 433–34;

- the party seeks to examine an individual with no knowledge of the debtor's affairs, *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr.D.Mass.1983); or

- when the examination would circumvent the more stringent discovery rules in adversary proceedings, *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr.D.N.J.1998); *but see, Matter of Sun Med. Management, Inc.*, 104 B.R. 522, 524–25 (Bankr. M.D.Ga.1989) (permitting a Rule 2004 exam to go forward, even though an adversary proceeding was pending).

 The UST must show good cause exists to conduct a Rule 2004 examination. *In re Buick*, 174 B.R. 299, 304 (Bankr.D.Colo.1994) (Once 2004 exam objected to, party must show "good cause" exists for taking the discovery). "'Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice.'" *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y.2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D.Cal.1993), *called into doubt on other grounds by In re Symington*, 209 B.R. 678 (Bankr.D.Md. 1997)).

 In this case, Debtor's motion for a protective order asserts the UST's purpose is to "harass, intimidate, and coerce the debtor." (Debtor's Mot. for Protective Order ¶ 16, Dckt. No. 76.) Debtor argues the UST's request for production of certain documents duplicates prior requests made by the auditor. (Debtor's Mot. for Protective Order ¶¶ 9–12, Dckt. No. 76.) Debtor also argues the deadlines to object to confirmation and Debtor's exemptions have expired and justice requires Debtor be protected from such "annoyance, embarrassment, oppression, and undue burden and expense occasioned by the unrelenting actions of the UST." *Id.* at ¶¶ 2, 3, 18. However, the mere fact that Debtor produced some of the documents to the independent auditor does not relieve Debtor from providing the UST with the requested documentation. Furthermore, confirmation of Debtor's plan does not prevent the UST from taking action, e.g., the time period to request a revocation of the confirmation order has not expired, no time limit prevents the UST from reporting appropriate debtors to the U.S. Attorney. Furthermore, at the February 26 hearing, the UST raised serious questions regarding the truth and veracity of Debtor's schedules. During the hearing, Debtor admitted he failed to disclose a joint

checking account and a life insurance policy on his schedules. Debtor also admitted he under reported the value of a retirement account by approximately $56,000.00 and listed the value of two annuities as "unknown" instead of their actual value of approximately $32,000.00. The UST uncovered these anomalies in Debtor's petition in addition to the auditor's discovery of Debtor's misstatement of his Form 22C income by $1,204.00 per month. Given these facts, I find the examination of the Debtor regarding these issues is a legitimate use of a Rule 2004 examination.

For the foregoing reasons, Debtor's Motion to Strike is DENIED, United States Trustee's Motion for Rule 2004 Examination is GRANTED, and Debtor's Motion for Protective Order is DENIED. A separate order will be entered granting the Trustee's request for a Rule 2004 exam.